EMPLOYERS MUTUAL COMPANIES/ILLINOIS EMCASCO INSUR-
ANCE COMPANY, Plaintiff-Appellant, v. COUNTRY COMPANIES, a/k/a
Country Mutual Insurance Company, a/k/a Country Casualty Insurance
Company, Defendant-Appellee.

First District (1st Division)   No. 1—89—0114

Opinion filed March 18, 1991.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge and Colleen H. Considine, of counsel), for appellant.

John J. Foley, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Employers Mutual Companies/Illinois Emcasco Insurance Company (Emcasco), appeals an order of the circuit court of Cook County granting the motion of defendant Country Companies, a/k/a Country Mutual Insurance Company, a/k/a Country Casualty Insurance Company (Country), to dismiss Emcasco's complaint for a declaratory judgment. For the reasons which follow, we affirm.

The record on appeal indicates the following. Emcasco issued an automobile policy effective March 11, 1983, through September 11, 1983, to Clara Doyle, covering a 1972 Plymouth Duster. The liability coverage of the Emcasco policy defines a "covered person" as including "[a]ny person using your covered auto."

In April 1983, Clara Doyle's driver's license was revoked. John M. Elsbury, Clara's nephew, later took possession of the 1972 Duster, indicating he intended to sell the car for Clara. For an indeterminate period of time, John M. Elsbury exercised control over the car, treating it as his own.

Country issued an automobile policy effective May 26, 1983, through November 26, 1983, to John M. Elsbury, covering a 1979 Pontiac. The Country policy does not specify which model. The liability coverage of the Country policy obligates Country to pay sums on behalf of an "insured" for bodily injury or property damage "caused by an accident resulting from the ownership, maintenance and use of an 'insured vehicle,' *** or of any 'nonowned vehicle.' " An "insured vehicle" includes, in relevant part, "any vehicle described on the declarations page." A "nonowned vehicle"

"refers to a land motor vehicle you or your relatives do not own and which is not available for regular use by you or a relative."

A "relative" includes "a person related to you by blood, marriage or adoption who is a resident of your household."

The Country policy also defines the term "insured" as including, in relevant part:

"1. With respect to an insured vehicle:

a. you and any resident of your household;

b. anyone using an insured vehicle with your permission or the permission of an adult relative;

c. anyone else, but only with respect to liability resulting from acts or omissions of an insured as defined in a. or b. above.

2. With respect to a nonowned vehicle:

a. you, when you are operating a nonowned vehicle or when that vehicle is operated by your agent (for example, an agent would include someone acting in your behalf);

b. your relatives.

3. you with respect to the operation and use of a motor vehicle owned or driven by your agent (for example, an agent would include someone acting on your behalf), provided you do not own, rent or lease that vehicle."

Finally, the Country policy contains an "other insurance" clause, which provides:

"If there is other applicable liability insurance for a loss covered by this policy we will pay our share of the loss. *** However, any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance."

Edward M. Elsbury is the son of John M. Elsbury. On June 17, 1983, Edward was driving the 1972 Plymouth Duster on State Line Road in Lake County, Illinois. Edward collided with a motorcycle, causing injuries to William Dorsey, who was the driver of the motorcycle, and Peter J. Campanella, who was Dorsey's passenger. It is undisputed that both policies were in effect on this date.

Dorsey filed a personal injury suit against Edward Elsbury; Campanella filed a personal injury suit against Dorsey, Edward Elsbury and John Elsbury. Emcasco accepted the defense of both the Dorsey and Campanella suits, subject to a reservation of rights. Later, Emcasco tendered the defense of these suits to Country, which declined to defend.

The Emcasco policy limit was $100,000. Emcasco settled the Dorsey suit for $35,000 and the Campanella suit for $23,000. Emcasco also incurred $26,733.83 in legal expenses regarding these lawsuits.

Emcasco then filed a complaint seeking a declaratory judgment in the circuit court of Cook County. The complaint sought a declaration that Country owed a duty to defend in the two lawsuits and that Country's refusal to defend estops it from asserting any policy defenses. The complaint also sought reimbursement of settlement and legal expenses resulting from Country's alleged breach of duty to defend.

Country filed a motion to dismiss the complaint, arguing that Country was an excess carrier and therefore had no duty to defend because Emcasco had not alleged that the limits of the primary policy had been exhausted. Country also argued that Emcasco's complaint did not allege coverage potentially within the scope of the Country policy.

Following a hearing on the matter, the circuit court of Cook County granted Country's motion to dismiss in an order entered on

December 12, 1988. Emcasco then timely filed its notice of appeal to this court.

In reviewing a dismissal, this court may affirm the decision of the trial court on any basis found in the record. *E.g., In re Marriage of Wilson* (1990), 193 Ill. App. 3d 473, 549 N.E.2d 1348.

Emcasco first contends that the trial court erred in granting Country's motion to dismiss on the basis that Country was an excess carrier. Emcasco argues that the threshold issue is whether Country had a duty to defend the insured. Emcasco contends that an insurer, when faced with a complaint it believes is not covered by its policy, must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. Thus, Emcasco concludes, if the insurer does neither and refuses to defend, it is estopped from alleging later that the insured was not covered by the policy or that there are policy defenses. See *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 934.

This court rejected a similar argument in *Federal Insurance Co. v. Economy Fire & Casualty Co.* (1989), 189 Ill. App. 3d 732, 545 N.E.2d 541, *appeal denied* (1990), 129 Ill. 2d 563, 550 N.E.2d 555, which involved a policy which provided excess coverage on its face. Excess coverage, however, may arise not only by drafting a policy which, on its face provides excess coverage, but also by "coincidence" where, as here, the judicial interpretation of two policies renders one policy excess. See Marick, *Excess Insurance: An Overview of General Principles & Current Issues*, 24 Tort & Ins. L.J. 715, 717-18 (1989) (and citations therein).

For example, in *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665, our supreme court held that a New Amsterdam policy was excess by coincidence with a Lloyds policy. Lloyds, which then had the primary duty to defend, had refused to defend the insured. Consequently, there was no "valid and collectible other insurance" with which the New Amsterdam policy could coincide, and New Amsterdam had been forced to defend the insured. The supreme court therefore allowed the excess carrier to recoup defense costs from the primary carrier, rejecting the argument that the "other insurance" clauses applied only to the duty to pay losses and not to the duty to defend and pay defense costs. See *New Amsterdam Casualty Co.*, 34 Ill. 2d at 431, 216 N.E.2d at 669.

*New Amsterdam Casualty Co.* lends support to the conclusion that the rule of *Federal Insurance Co.*, that an excess carrier, faced with a complaint it believes is not within the scope of its coverage, is not in-

variably forced to defend the insured or seek a declaratory judgment, also applies in this case of excess coverage by coincidence.

The cases cited by Emcasco are distinguishable from this case. Some involve an insurer's failure to indemnify an action based on an exclusion in the insurance policy. These cases are inapposite because failure to defend estops an insurer from raising exclusionary defenses. (See *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) An excess insurance clause, however, is conceptually distinct from an exclusionary clause; the latter limits liability, whereas the former apportions it. (*Western Casualty & Surety Co. v. Western World Insurance Co.* (7th Cir. 1985), 769 F.2d 381, 385.) The remainder of the cases cited by Emcasco involve the primary insurer's duty to defend its insured, not the excess insurer's duty to defend.

In any event, even if Country were not an excess carrier, Emcasco's argument that Country had a duty to defend these claims would not persuade this court. When an insurer contracts to defend its insured, it must do so unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case potentially within the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247.) In deciding whether a duty to defend exists, only the allegations of the complaint and the terms of the policy are consulted. *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 476, 430 N.E.2d 1104, 1108.

Accordingly, two conditions must be met before an insurer's duty to defend arises: (1) the action must be brought against an insured, and (2) the allegations of the complaint must disclose potential coverage under the policy. (*Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 957, 473 N.E.2d 480, 484.) If the allegations of the complaint reveal that the action was not brought against an insured or that there was no potential for coverage under the policy, there is no duty to defend the underlying action, and the insurer can justifiably refuse to defend. *MFA Mutual Insurance Co. v. Crowther, Inc.* (1983), 120 Ill. App. 3d 387, 390, 458 N.E.2d 71, 73; *La Rotunda*, 87 Ill. App. 3d at 451, 408 N.E.2d at 933.

We therefore turn to the question of whether the underlying complaints alleged an action against an insured under the Country policy in this case. The Dorsey complaint alleged negligence on the part of Edward M. Elsbury, but the record indicates that Edward is not a named insured under the Country policy. Moreover, the Dorsey complaint does not even mention either John M. Elsbury or Phyllis L. Elsbury, who the record indicates are the named insureds under the Coun-

try policy. In short, the Dorsey complaint is devoid of allegations that would allow Country to determine that this action had been brought against an "insured" under the terms of the policy. Under the facts and circumstances in this case, potential "coverage cannot be inferred merely because the son of the insured is named in a lawsuit." *Federal Insurance Co.*, 189 Ill. App. 3d at 736, 545 N.E.2d at 545; *Murphy*, 129 Ill. App. 3d at 958, 473 N.E.2d at 484.

■ By contrast, the Campanella complaint named John M. Elsbury as a defendant and alleged that Edward M. Elsbury was the agent of John M. Elsbury. This complaint therefore brings an action against an "insured" under the Country policy, both because John M. Elsbury was a named insured and because John could be considered an insured if Edward was operating a "nonowned vehicle" or a motor vehicle owned or driven by Edward and not owned, rented or leased by John.

The question remains, however, as to whether the Campanella complaint stated facts which would bring the case potentially within the Country policy's coverage. The relevant section of the Country policy states that the accident must result from the ownership, maintenance or use of either an "insured vehicle" or a "nonowned vehicle." The Campanella complaint alleges that Edward negligently operated a 1971 Plymouth Duster. Emcasco admits in its brief that the vehicle is actually a 1972 Plymouth Duster. The record shows that the only vehicle covered as an "insured vehicle" under the Country policy is a 1979 Pontiac. The Campanella complaint further alleges that the automobile at issue was owned by John; this allegation affirmatively removes the possibility that John would be covered under the "nonowned vehicle" provisions of the Country policy.

■ In sum, the Dorsey complaint fails to allege an action against an insured and the Campanella complaint alleges an action which falls outside the potential coverage of the Country policy. Country could not be estopped from asserting these defects because they relate to the scope of coverage afforded by the definitions contained in the policy, rather than exclusions. See *Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 901-02, 409 N.E.2d 387, 391-92.

Emcasco, therefore, has failed to show that the trial court erred in dismissing its complaint for a declaratory judgment. For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.